**E-FILED**
Thursday, 03 February, 2005  12:25:49 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | |
| v. | No.:  03-20085 |
| THOMAS L. CANNON, | |
| Defendant. | |

### DEFENDANT'S COMMENTARY ON SENTENCING FACTORS

NOW COMES  the Defendant, THOMAS L. CANNON and Richard H. Parsons, Chief Federal Public Defender for the Central District of Illinois, by and through TIFFANI D. JOHNSON, Assistant Federal Public Defender, and pursuant to Title 18 U.S.C. Section 3551, 3553, 3582, 3561 & 3661, and pursuant to the recent Supreme Court decision in *Booker* submits the following sentencing memorandum on behalf of the defendant:

### I.  Procedural History of Case

On October 23, 2003, the Defendant was charged in this cause in a one count bill of indictment with the offense of possession with the intent to distribute, 50 grams or more of cocaine base "crack."   On December 10, 2003, the Defendant was found guilty after trial by jury.  A PSR report was drafted on February 4, 2004 and revised on March 23, 2004 providing for a guideline range of 235 to 293 with an enhancement for obstruction of justice. However, the probation officer found that a statutory mandatory sentence of life should be imposed based upon the defendant's two prior convictions for drug possession in 1995 and 1996 for which he initially received 30 months probation, and subsequently received 2 years imprisonment.

1

### II.  Section 21 U.S.C. 841 is Unconstitutional Under *Apprendi* and *Booker* Requiring the Application of the Default Statutory Maximum of 30 Years With No Mandatory Minimums

The defendant objects to the assessment of his mandatory minimum as life imprisonment, and submits that his statutory sentencing range is up to thirty years imprisonment with no mandatory minimum requirement.  In support of this range, the defendant contents that the Seventh Circuit in *Brough* erred in failing to apply the doctrine of judicial review in finding 21 U.S.C. § 841(b)(1) constitutional. *See United States v. Brough*, 243 F.3d 1078 (7th Cir. 2001). The defendant asserts that when 21 U.S.C. § 841(b)(1) is properly reviewed in conformity with Supreme Court precedent, the statute must be declared unconstitutional, and 21 U.S.C. §841(b)(1)(A)-(B) must be severed to save the statute. Therefore the defendant may not be sentenced to more than thirty years, without regard to any minimum mandatory.

**A.    No statute providing for judge-based default statutory maximum enhancement is constitutional under *Apprendi v. New Jersey, Blakely v. Washington* and *United States v. Booker***

*United States v. Booker* is the latest Supreme Court decision in an extended debate about the legislature's inability to designate statutory maximum enhancements as sentencing factors to be assessed by judges by a preponderance of the evidence, thereby circumventing the constitutional Fifth and Sixth Amendment requirements that such enhancements be proven to a jury beyond a reasonable doubt.  *United States v. Booker*, 125 S.Ct. 738*; See also Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Jones v. United States*, 526 U.S. 227 (1999); *Almendarez-Torres v. United States*, 523 U.S. 224 (1998); *McMillan v. Pennsylvania*, 477 U.S. 79 (1986); *Patterson v. New York*, 432 U.S. 197 (1977); *Mullaney v. Wilber*, 421 U.S. 684 (1975).

The Constitutional issues at stake in this statutory analysis is the proscription of any deprivation of liberty without "due process of law," Amdt. 5, and the guarantee that "[i]n all criminal

2

prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury, Amdt. 6. Taken together, these rights indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Apprendi v. New Jersey* 530 U.S. 466, 476-477(2000) *quoting United States v. Gaudin*, 515 U.S. 506 (1995).

**B.    Doctrine of Judicial Review**

There are specific rules of judicial review that the court must follow when reviewing statutes for constitutionality in order to meet the constraints of the separation of powers. *Hill v. Wallace*, 259 U.S. 44, 71 (1922) (Taft, Ch.J.) (severability analysis "does not give the court the power to amend the act"). As seen most recently in *Booker*, the appropriate way to judicially review the constitutionality of a statute is to: (1) determine the statute's construction and operative effect by reviewing its plain meaning and, if appropriate, the legislature's intent; (2) determine whether that operative affect is unconstitutional or can be saved; and (3) if so, determine whether that unconstitutionality is severable. The Supreme Court has followed this mode of analysis in every one of its statutory analyses of the constitutionality of sentencing enhancing statutes. See *United States v. Booker*, 125 S.Ct. 738,  *Apprendi*, 530 U.S. 466; *Jones v. United States*, 526 U.S. 227; *Almendarez-Torres v. United States*, 523 U.S. 224; *McMillan*, 477 U.S. 79; *Patterson*, 432 U.S. 197; *Mullaney*, 421 U.S. 684.

In the past, the Supreme Court has stricken attempts to circumvent the doctrine of judicial review. *Chapman v. United States,* 500 U.S. 453, 463(1991). The *Chapman* Petitioners argued that the rule of lenity required 21 U.S.C. § 841 to be construed in favor of the defendant, and to be construed to avoid any serious constitutional question that may result in a due process violation. In response, the Supreme Court concluded that:

3

> The rule of lenity, however, is not applicable unless there is a "grievous ambiguity or uncertainty in the language and structure of the Act," *Huddleston v. United States,* 415 U.S. 814, 831 (1974), such that even after a court has " 'seize[d] every thing from which aid can be derived,' " it is still "left with an ambiguous statute." *United States v. Bass,* 404 U.S. 336, 347 (1971) (quoting *United States v. Fisher,* 2 Cranch 358, 386, 2 L.Ed. 304 (1805)). "The rule [of lenity] comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Callanan v. United States,* 364 U.S. 587, 596 (1961). See also, *e.g., Moskal v. United States, supra,* 498 U.S., at 107-108, 111 S.Ct., at 465.

*Chapman*, 500 U.S. 453, 463. Thus, the Supreme Court did not allow the Petitioner to skip the rules of judicial review. The Court first required a review of the plain meaning of the statute, then the legislative history, an finally the rule of lenity and statutory interpretation to avoid unconstitutional construction in close cases. However, the Court noted that this last part of the procedure is " 'not a license for the judiciary to rewrite language enacted by the legislature.'" *Chapman, 500 U.S. 453, 464* quoting *United States v. Monsanto,* 491 U.S. 600, 611 (1989).

Any application of *Apprendi* that purports to authorize judges to contradict without reinterpreting a statute in order to enforce the statute exceeds the power of judges under Article III and violates the constitutional separation of powers by trenching upon the legislative domain. *Hill*, 259 U.S. at 71; *United States v Jackson,* 390 U.S. 570, 572-82 (1968) (voiding death penalty provision applicable only to those exercising right to jury trial; rejecting Government's proposed extra-statutory procedural overlays).

## C.    Seventh Circuit Precedent Establishes that Drug Type and Amount under Chapter 21 U.S.C. § 841(b) is a Congressionally Intended Sentencing Factor

The Seventh Circuit in *Brough* recognized that prior to *Apprendi*, they had ruled that 21 U.S.C. §841(a) established the elements of the offense, and that 21 U.S.C. § 841(b)(1) established sentencing factors, including drug amount and type, which could be determined by a judge by a preponderance of the evidence. *Brough*, 243 F.3d 1078, 1079 (7th Cir. 2001) citing *United States*

*v. Edwards*, 105 F.3d 1179 (7th Cir. 1997), affirmed, 523 U.S. 511 (1998); *United States v. Jackson*, 207 F.3d 910 (7th Cir. 2000), remanded 531 U.S. 953 (2000), decision on remand, 236 F.3d 886 (7th Cir. 2001) (recognizing that *Apprendi* makes any fact that increases the statutory maximum an element that must be proven to a jury beyond a reasonable doubt, but holding that plain error did not require reversal because the evidence was so overwhelming that no jury would have failed to convict).

The *Brough* court ruled that the default statutory maximum for drug offense is 20 years pursuant to § 841(b)(1)(C), *Brough*, 243 F.3 at 1080. Therefore, under *Apprendi*, any facts that could result in a sentence above 20 years must be found by a jury beyond a reasonable doubt. However, §841(b)(1)(A)-(B) increases the default sentence to life depending upon drug type and amount. Prior to *Apprendi*, the Seventh Circuit analysis of §841(b)(1) determined that this section clearly was established by Congress as sentencing enhancements, which could not be construed otherwise, including by the use of the doctrine of statutory construction:[1]

> The avoidance of the constitutional issue by statutory construction is not available in the case of section 841, because the division between the elements of the crime and factors relating to how severely to punish offenders is much clearer than in the statute interpreted in *Jones*. Subsection (a), captioned "Unlawful acts," defines the offense of distributing, etc. a controlled (or counterfeit controlled) substance, while subsection (b), captioned "Penalties," specifies how the "person who violates subsection (a) ... shall be sentenced"--namely more severely depending on the type and quantity of the drug. The defendants in this case were convicted of distributing a variety of drugs, including marijuana, the distribution of which calls for a much lighter sentence in section 841(b) than other drugs, notably crack cocaine, one of the major commodities sold by the Gangster Disciples. It is apparent that Congress intended the type and quantity of the drugs distributed by a defendant convicted

---

[1] The doctrine of statutory construction provides that where a court examines the plain language and legislative intent of a statute and determines that "a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Jones v. United States*, 526 U.S. 227, 239 (1999).

under section 841(a) to be determined at sentencing, unlike the situation in *Jones*, and Congress's determination of the appropriate allocation of decisional responsibilities carries a presumption of constitutionality.

*Jackson*, 207 F.3d 910, 920.  On remand, the *Jackson* court did not alter its analysis that the parts of § 841(b)(1) were intended by Congress to be sentencing factors. In further analysis, the Seventh Circuit ruled that § 841(b)(1) are not always sentencing factors, but they did not go so far as to say that they are elements, or to explain when they are to be considered sentencing factors and when they are considered to be elements. *United States v. Nance*, 236 F.3d 820, 825 (7th Cir. 2000).

Clearly this is because a review of the legislative history demonstrates that in fact, when Congress referenced § 841(b)(1), they used terminology such as "penalties," "enhanced sentencing provisions," and "punishment", as opposed to "elements." *See S. Rep.* 98-225, 1984 U.S.C.C.A.N. 3182 (1st Sess. 98th Cong 1983). In Part A– Controlled Substances Penalties, § 2, the senate report noted that subsection (A) of the original § 841 punishes those who knowingly or intentionally manufacture, distribute, dispense or possess with intent to dispense a controlled substance. *Id.* However, the report notes, "the penalties for these offenses are set out in subsection (B) of § 841." *Id.* The report goes on to indicate that Section 502 of the Comprehensive Crime Control Act of 1984 "amends Title 18 U.S.C. 841(B) — the provisions which sets out the penalties for the most serious domestic drug trafficking offenses." *Id.*

There is no doubt that in enacting 18 U.S.C. § 841(b)(1), Congress intended this section to be sentencing enhancements, and not elements.

**D.     The Seventh Circuit in *United States v. Brough*, 243 F.3d 1078 Held That Congress Did Not Specify Who Determines What Facts Under What Burden in § 841(b)(1)**

Despite the *Jackson* court's accurate analysis that §841(b)(1) established sentencing enhancements, the *Brough* panel rejected a claim that the provisions of § 841(b)(1) are

6

unconstitutional under *Apprendi*. The *Brough* panel noted that the statute was silent on the question of whether 841(b)(1) established penalties, and used the following improper statutory analysis to form its conclusion of constitutionality:

> If Congress had specified that only judges may make the findings required by §841(b), or that these findings must be made by a preponderance of the evidence, then § 841 would create a constitutional problem. But the statute does not say who makes the findings or which party bears what burden of persuasion. Instead the law attaches effects to facts, leaving it to the judiciary to sort out who determines the facts, under what burden. It makes no constitutional difference whether a single subsection covers both elements and penalties, whether these are divided across multiple subsections (as § 841 does), or even whether they are scattered across multiple statutes (see 18 U.S.C.§§ 924(a), 1963).

*Brough* 243 F.3d 1078, 1079 (7th Cir. 2001).

## E.   Congress must allocate the authority between judge and jury in which is implicit or explicit in a criminal statute

Contrary to *Brough*, the Supreme Court has ruled that Congress must define the contours of federal criminal offenses, *Bousely v. United States*, 523 U.S. 614, 620-21 (1998), and the courts cannot revise an allocation of authority between judge and jury which is explicit or implicit in a criminal statute. *United States v. Jackson*, 390 U.S. at 572-82 (rejecting government's attempt to save a statute through extra-statutory procedural overlays). The decision in *United States v. Evans*, 333 U.S. 483 (1948) defeats *Brough*'s construction based upon a specific congressional intent to leave the contours of § 841 for judicial determination. *See Evans*, 333 U.S. at 486 (Constitution limits the Court in supplying the undefined in criminal statutes).

One of the principal flaws of the statute in *Evans* was its ambiguity as to allowable unit of prosecution[2].   *Id.* at 490-91 (declining to resolve the "scope and quality of forbidden acts"

---

[2] The "allowable unit of prosecution" involves congressional intent to define exactly what conduct constitutes an offense for the purpose of the attachment of double jeopardy, thereby preventing multiple trials on different parts of the same acts constituting the offense. *See*

chargeable in each count because it "would be to proceed in an essentially legislative manner for the definition and specification of the criminal acts, in order to make a judicial determination of the scope and character of the penalty.")

Drug type and amount are too intimately related to the allowable unit of prosecution to have been validly left to the courts for further definition. *Compare United States v. Grandison*, 783 F.2d 1152, 1156 (4th Cir. 1986) ("Congress intended the possession of each scheduled substances to be a difference offense"), with *United States v. Edwards*, 105 F.3d 1179, 1181 (7th Cir. 1998) ("a controlled substance" is only an element; drug types and amounts go to sentencing under the singular offense), *aff'd* 523 U.S. 511 (1998).

Indeed, the *Brough* statutory reinterpretation of § 841 constitutes no more than an improper "dynamic view of statutory interpretation, under which the text might mean one thing when enacted, and yet another if the prevailing view of the Constitution later changed." *Harris v. United States*, 536 U.S. 536, 556 (2002). In relying on *Brough*, the Second Circuit ruled that "[T]here is nothing in § 841 — nor is there usually in federal criminal statutes — which specifies a division of responsibility between judge and jury as to drug quantity . . . In respect to this statute at least, that division is, and in this circuit always has been, a judicially crafted overlay based upon constitutional principles and so too our interpretation of the statue." *United States v. Outen*, 286 F.3d 622, 636 (2d Cir. 2002); *see also United States v. Kelly*, 272 F.3d 622 (3d Cir. 2001) (relying on *Brough*). *Brough*, *Kelly* and *Outen* clearly rely on the "dynamic view of statutory interpretation" subsequently and clearly rejected by the Supreme Court in *Harris*. There is nothing to support the *Brough* analysis but the hope that its new statutory interpretation reconciles § 841 with *Apprendi* under the precepts

---

*Sanabria v. United States*, 437 U.S. 54, 70 (1978).

of judicial review.

**F.  The *Brough* Interpretation of 21 U.S.C. § 841(b)(1) Does Not Save the Statute from a Declaration of Unconstitutionality Under *Apprendi* and *Booker***

The *Brough* court does not change the distinction between the "elements" of § 841(a) and the "events" of § 841(b); *Brough*, 243 F.3d at 1080; *see also Thomas v. United States*, 328 F.3d 305, 309 (7th Cir. 2003) (*Apprendi* "does not make drug quantity an 'element' of the offense under 21 U.S.C. § 841.") Instead, the *Brough* court holds that *Apprendi* authorizes the Court to treat the statute, which is silent on the issue of what are elements and what are penalties, in a way that clearly contradicts congressional intent that § 841(a) addresses the elements and § 841(b) addresses the penalties.

The *Brough*'s court ruled that "*Apprendi*" or "the Constitution" empowers the Court to keep the entire language of a clearly unconstitutional statute — as long as the Courts follows certain procedures — irrespective of the intent of the legislature and without declaring the statute in question unconstitutional.

*Apprendi* focus on the statute, not the particular sentence, is manifest in its restatement of the controlling constitutional principle: "[I]t is unconstitutional for a *legislature* to remove from the jury the assessment of facts that increase the prescribed range of penalties . . ." *Apprendi*, 530 U.S at 490 (emphasis added). Moreover, the Court refers to the "novelty" of such a "legislative scheme," and repeatedly refers to whether the operative facts of the statute "exposes" the defendant to an increased maximum. Id at 482-85, n. 10. The rule of *Apprendi* constitutes a constitutional test against which statutory *language*, and not application, must be compared. Consistent with judicial review, provisions of statutes that do not meet the constitutional test of *Apprendi* must be stricken. The Supreme Court has stated:

9

> It is one thing [for a court] to fill a minor gap in a statute – to extrapolate from its general design details that were inadvertently omitted.  It is quite another thing to create from whole cloth a complex and completely novel procedure and thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality.

*United States v. Jackson*, 390 U.S. 570, 580 (1968).

The Seventh Circuit performed first part of judicial review prior to *Apprendi*, and determined that § 841(a) involved elements and § 841(b) involved sentencing enhancements above the default maximum. *Jackson*, 207 F.3d 910, 920.  The *Brough*'s court, in its constitutional analysis, never altered *Harris'* ruling that drug amount and type are not elements of the offense.  *Brough*, 243 F.3d at 1080. The *Brough*'s court could not do this, because it would be contrary to both the plain reading and the legislative history of the statute.

Instead, the *Brough* approach interprets *Apprendi* as a matter of procedure, rather than as a constraint upon the legislative definition of "crime," and further determines that the "procedure" is governed by the courts (i.e. "the Constitutional" or "*Apprendi*"), completely disregarding the doctrine of judicial review that has been established by a long line of Supreme Court decisions. In essence, the *Brough*'s court renders judicial review pointless, and declares the Constitution to be a self-executing document that automatically converts inconsistent legislative enactments to meet its requirements, without ever making a finding of unconstitutionality, or determining severability. The *Brough*'s court completely ignored the legislative intent of the silent statute, and in doing so constructively rewrote the statute to comply with the Constitution under *Apprendi*.

The separation of powers doctrine simply does not allow Courts to rewrite statutes, directly or constructively. *See, e.g., Evans*, 333 U.S. at 486. The *Brough*'s analysis is inconsistent with the limited role judicial review plays in our system of divide government, *see Miller v. French*, 530 U.S. 327, 340-41 (2000), and the Constitution's assigning power over the definition of crime to Congress,

10

denying courts that power. *See Miller v. French*, 530 U.S. 327, 340-41 (2000); *Bousley*, 523 U.S. at 620-21. The approach of *Brough* represents an unprecedented and unconstitutional adjudication that exceeds the only legitimate mode of constitutional adjudication – judicial review.

**G.     The State Courts have not abandoned the limitations of judicial review in response to Apprendi.**

The Kansas Supreme Court declared the Kansas upward durational departure statute unconstitutional under *Apprendi*. *State v. Gould*, 23 P.3d 801 (Kan. 2001). In response, the State attempted to save the statute on grounds identical to the federal approach to *Apprendi* in Federal drug cases arguing:

> The State argues that Gould did not render the statute vesting the trial court with authority to impose durational upward departures unconstitutional, but rather only the scheme employed by the courts in doing so.  The State points out that the procedure employed by the trial court was in accordance with the requirements articulated in *Apprendi* and consistent with the Kansas Legislature's response to *Gould*.

*State v. Kessler*, 73 P.3d 761, 773 (Kan. 2003). The Kansas Supreme Court squarely refused to "work around a flawed sentencing scheme," holding instead that "where the statutory procedure has been found unconstitutional, the district court has no authority to impose such a sentence." *Id.* Other State supreme courts have firmly adhere to the approach of applying *Apprendi* consistent with the limited powers of judicial review. *See, e.g., State v. Grossman*, 636 N.W.2d 545, 551 & n.3 (Minn. 2001) (under *Apprendi*, statute is unconstitutional as applied, and likely facially unconstitutional); *State v. Palmero*, 818 So.2d 745, 753-54 (La. 2002) (declaring statute unconstitutional); *Woldt v. People*, 64 P.3d 256, 272 (Colo. 2003) (under *Ring,* death penalty statute is unconstitutional; life sentence must be applied on remand). Notwithstanding the consequences of reduced sentences and statutes declared unconstitutional, these States have enforced *Apprendi* consistent with the limited role courts are allowed in enforcing the United States Constitution against unconstitutional

legislative enactments.

No matter how strongly the courts of appeal may want to avoid the consequences of declaring §841 unconstitutional, they are bound by the strictures of judicial review, and cannot abdicate their constitutional responsibilities by constructively re-writing 21 U.S.C. § 841.

### III.  Legal Sentencing Factors to Be Considered

Now that the United States Sentencing Guidelines are advisory, the Court has much more flexibility in weighing factors to impose sentences under the statutory maximum.  This Court should look to Chapter 7 of the Guidelines, dealing with violations of probation and parole --- which have always been advisory --- for guidance on how to approach the now advisory sentencing guideline regime.

Chapter 7 of the Guidelines specifies the importance of *flexibility* in an advisory sentencing regime.  Specifically, Chapter 7 first emphasizes the importance of flexibility in imposing sentences for violations, because, as it states: "The Commission views these policy statements [contained in Chapter 7] as evolutionary and will review relevant data and materials concerning revocation determinations under these policy statements. Revocation guidelines will be issued after federal judges, probation officers, practitioners, and others have the opportunity to evaluate and comment on these policy statements."  U.S.S.G. Ch. 7, A-1 (Authority). It is clear that the Commission expected, under an advisory system, to have judges, probation officers, and attorneys for both the Government and defendants to help shape an "evolutionary" revocation regime.  Thus, the Commission was comfortable in allowing flexibility in revocation decisions in the hopes that a pattern of practice could be discerned, over time, but that such a practice would require the participation of all involved.

Further, to make such considerations, Chapter 7 refers to differing theories of revocation.

12

The first involved a "breach of trust" approach, which secondarily considered the nature of the underlying offense. *Id.* at A-3(b). The second involved sanctions as though the revocation would be directed specifically at the violating conduct; as though the defendant was being punished for a new, specific crime. *Id*. The Commission stated that the first theory was preferable because, *inter alia,* "The potential unavailability of information and witnesses necessary for a determination of specific offense characteristics or other guideline adjustments could create questions about the accuracy of factual findings concerning the existence of those factors." *Id.* The Defendant submits that this quandary is analogous to the problems defendants and judges faced before *Booker*. Using a lower standard of proof, and relying on letters from the Government raises substantial questions about the accuracy of the enhancement imposed upon a defendant, and thus, the Courts should shy away from relying on a Presentence Investigative Report that is intended to be "fact heavy", and merely attempts to quantify the amount of drugs, or money involved in a transaction or offense, and should rather focus on the offense conduct actually admitted, and look to the totality of the circumstances surrounding his or her offense involved. In a Post-*Booker* regime, this process is precisely what is needed to give Congress the opportunity to respond, if at all, to the Supreme Court.

That being said, 18 U.S.C. § 3553(a) *et seq.* should provide the most guidance --- when taken together with relevant information from the Probation Department --- to the Court in determining the sentence to be imposed upon a defendant. Individuals found guilty of an offense shall be sentenced, in accordance with the provisions of 18 U.S. C. 3553, to (1) a term of probation as authorized by subchapter B; (2) a fine as authorized by subchapter C; or (3) term of imprisonment as authorized by subchapter D.

The court shall impose a sentence sufficient, BUT NOT GREATER THAN NECESSARY, to comply with the purposes set forth. 18 U.S.C. 3553(a)(1). This is the overriding standard which

must be applied now that the Supreme Court has excised 18 U.S.C. § 3553 (b) from the Sentencing Reform Act. *United States v. Booker*, 125 S.Ct. 738.

The Breyer majority opinion states that the "district courts, while not bound to apply the Guidelines, must *consult* those Guidelines and take them into account when sentencing." *See* 18 USC §§ 3553(a)(4). *United States v. Booker*, 125 S.Ct. 738, 767 (U.S. Jan. 12, 2005) (Breyer, J.) (emphasis added). Therefore, at minimum the district court has to consider the guideline calculations and ranges. Note, however, that 18 USC § 3553(a) lists the guidelines as the *last* among the factors to be considered. The *first* factor is "the nature and circumstances of the offense *and the history and characteristics of the defendant*." This Court, therefore, should determine the sentence *first*, then check its conclusions against what the guidelines recommend. The "holistic" sentence, that encompasses all factors (including prohibited factors), should necessarily be lower, because the guideline range does not include previously prohibited or discouraged factors.

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence. 18 U.S.C. § 3661. *See also United States v. Booker*, 125 S.Ct. 738, 767 (expressly endorsed by J. Breyer).

A defendant who has been found guilty of an offense *may* be sentenced to a term of *probation* unless the offense is a Class A (life imprisonment) or Class B (25-years or more) felony and the defendant is an individual, or probation has been expressly precluded. 18 U.S.C. § 3561 (a). For a felony, the authorized term of probation is 1 - 5 years. 18 U.S.C. § 3561 (c).

The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is NOT

14

*an appropriate means of promoting correction and rehabilitation*. 18 U.S.C. § 3582(a).

The court, in determining the particular sentence to be imposed, shall consider --- (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; and (4) the kinds of sentences and the sentencing range established by the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. 3553(a).

The sentence imposed shall (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with the needed educational or vocational training, medical care of other correctional treatment in the most effective manner. 18 U.S.C. 3553(a)(2).

Since the Sentencing Guidelines are now advisory, the departure provisions set forth in Section 5, Parts H and K, while providing a template for determining a reasonable sentence, no longer dictate to district judges how much weight, if any, they may give to mitigating or aggravating factors which may impact the sentence.

After the advisory guideline range is determined, traditional sentencing factors should be considered, including, *but not limited to*: (1) age, (2) education, (3) vocational skills, (4) mental and emotional conditions, (5) physical conditions, (6) drug, alcohol or gambling addictions, (7) employment record, (8) family ties and responsibilities; (9) role in the offense, (10) criminal history; (11) social-economic status; (12) military, civic, charitable, or public service; (13) lack of guidance as a youth; (14) aberrant behavior; and (15) cooperation.  Although prior to *Booker* the Sentencing

Commission dictated the weight a judge could give to each of these factors, if any, it is now the district judge who determines how much weight to give each factor, and how the factors impact the ultimate reasonableness of the sentence to be imposed. The district judge is now free to consider the traditional factors used by judges for centuries and assign the appropriate weight thereto.

"Sentencing will be harder now than it was a few months ago. District Courts cannot just add up the figures and pick a number within a narrow range. Rather, they must consider all of the applicable factors, listen carefully to defense and government counsel, and sentence the person before them as an individual. *Booker* is not an invitation to do business as unusual." *United States v. Ranum*, No. 04-CR-31 (E.D/Wisc. Jan 19, 2005) (J. Adelman) ("In every case, courts must now consider all of the § 3553(a) factors, not just the guidelines. And where the guidelines conflict with the other factors set forth in § 3553(a), courts will have to resolve the conflicts.")

Judge Adelman noted a different and clearly more flexible approach to sentencing after *Booker* than that which Judge Paul Cassell had espoused in his earlier decision in *United States v. Wilson, 2005* U.S. Dist. LEXIS 735 (D.Utah Jan 13, 2005).  With his typical clarity, Judge Adelman explained:

> The directives of Booker and [18 U.S.C.] § 3553(a) make clear that courts may no longer uncritically apply the guidelines and, as one court suggested, 'only depart . . . in unusual cases for clearly identified and persuasive reasons.' *United States v. Wilson*, Case No. 2:03-CR-0082, 2005 WL 78552, at *1 (D. Utah Jan 13, 2005). The approach espoused in *Wilson* is inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider all of § 3353(a) factors, many of which the guidelines either reject or ignore.  For example, under §3553(a)(1) a sentencing court must consider the 'history and characteristics of the defendant.' But under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional conditions, § 5H1.3, his physical condition including drug or alcohol dependence, §5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The

16

guidelines' prohibition of considering these factors cannot be squared with the §3553(a)(1) that the court evaluate the 'history and characteristics' of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history. Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside of the guideline range.

In some cases, a defendant's educational, treatment or medical needs may be better served by a sentence which permits the offender to remain in the community pursuant to 18 U.S.C. § 3553(a)(2)(D). Therefore the sentencing court must also evaluate the need to provide the defendant with education, training, treatment or medical care in the most effective manner. 18 U.S.C. § 3553(a)(2)(D), which might conflict with the guidelines, which in most cases offer only prison. See U.S.S.G. § 5C1.1 (describing limited circumstances in which court can impose sentence other than imprisonment).

While one can't fault the *Wilson* Opinion's general premise that Congress has clearly indicated that is primary concern is deterrence, incapacitation and promotion of respect for the law, that doesn't logically lead to its unsupportable conclusion that Congress and a centralized Sentencing Commission are much better equipped than district judges to decide what constitutes "just punishment." There is certainly a superficial appeal to the *Wilson* Opinion's observation that "the court is poorly suited to consider elasticities and other factors that would go into a sensible deterrence calculation," or its continuing observation that, "[o]n the other hand, the Sentencing Commission with its ability to collect sentencing data, monitor crime rates, and conduct statistical analyses, is perfectly situated to evaluate deterrence arguments." *Wilson*, slip op. at 17. But the issue isn't that simple.

Hearings and studies, of course, are the best method by which to assess whether certain types of sentences will produce *general* deterrence with respect to millions of possible perpetrators. But

17

an assessment of the specific-deterrent value of a particular sentence to a *particular* defendant can be made only with the benefit of knowing that defendant's individual characteristics and circumstances. Thus, to be accurate, the *Wilson* opinion should also have observed that while the Sentencing Commission may be "perfectly situated" to evaluate general deterrence issues, it was "poorly suited" to consider specific deterrence -- and that district courts are, in fact, "perfectly suited" to make this type of individual assessment. By collapsing these two fundamental objectives of punishment, the *Wilson* opinion simply endorses the twenty-year-old--now discredited-- assumption underlying mandatory guidelines; that individual characteristics don't have any place in sentencing decisions.

The *Wilson* opinion is equally weak when it comes to conclusions about the relative weight to be given to various objectives articulated in § 3553. Again, Congress has certainly indicated its belief that general deterrence and incapacitation are very important goals. Yet, independent Article III judges are part of a co-equal branch of government and have been given the responsibility -- by common law and by virtue of 18 U.S.C. §§ 3553(a), 3661 and 3582 -- of achieving individual justice by considering the individuals before them. Accordingly, they simply cannot abdicate that responsibility, as the court in *Wilson* appeared to conclude they should, simply because a nationwide legislative body had indicated its desire that courts give law enforcement objectives serious consideration. The *Wilson* opinion provides no justification for so heavily weighting law-enforcement objections over individualized factors. Indeed, any such deference would conflict with the lifetime tenure the Framers provided district judges, which was intended to encourage them to use their independent judgement in the face of determined political pressure.

The *Wilson* opinion goes on to state that because the Guideline are the only nationwide standard available, it should be used in all but the most exceptional cases. However, by choosing

18

the narrowest adjective, "exceptional" -- and fashioning a strict standard that the *Booker* remedial majority never even suggested -- the *Wilson* Court incorrectly concludes that district judges must abdicate the duties of an independent judiciary to incorporate individual factors and simply defer to the debatable "sense" of Congress that individual factors are less important than general ones. Such a dramatic shift in responsibility cannot be based on the bald and unsupported reasoning employed in *Wilson*.

In United States v. Meyers, 2005 WL 165314 (S.D. Iowa Jan 26, 2005), Judge Pratt notes the distinct views of Booker reflected in Judge Adelman's Ranum opinion and Judge Cassell's Wilson ruling and states:

> This Court adopts Judge Adelman's view. To treat the Guidelines as presumptive is to concede the converse, i.e., that any sentence imposed outside the Guideline range would be presumptively unreasonable in the absence of clearly identified reasons. If presumptive, the Guidelines would continue to overshadow the other factors listed in section 3553(a), causing an imbalance in the application of the statute to a particular defendant by making the Guidelines, in effect, still mandatory.

After a long quote from the *Ranum* opinion noting how the requirements of § 3553(a) can conflict with aspects of the guidelines, Judge Pratt in *Myers* highlights:

> In citing *Ranum*, this Court does not mean to be unduly harsh about the wisdom contained in the Guidelines, for wisdom is there. Wisdom, however, also resides in the other statutory sentencing factors, but was not allowed expression under the former mandatory scheme. Each of the factors enumerated under § 3553(a) is, in reality, an expression of our society's multiple interests in sentencing an individual.

Calling *Booker* an "an invitation, not to unmoored decision making, but to the type of careful analysis of the evidence that *should* be considered when depriving a person of his or her liberty," Judge Pratt proceed thoughtfully reviewed the purpose of the factors in § 3553(a) in the context of a minor gun possession case. And, after finding that an "aberrant behavior" departure under guideline § 5K2.20 was sought by the defendant and not contested by the government, Judge Pratt

19

concluded by explaining why the factors of § 3553(a) make a "term of imprisonment in this case is completely unwarranted," and why he imposed a sentence of probation "to deter others from committing similar acts."

### IV. Specific 3553 Factors for Consideration in this Case

Considering the timing of Booker, and the due date of this Commentary, defense counsel has not yet had time to fully investigate and assess the presence or absence of § 3553 factors in the case at hand. The Defendant therefore hereby requests permission to supplement this commentary on or before the day of sentencing with a section specifically addressing the § 3553 factors that he considers to be applicable to his individual case. This additional time to supplement will give defense counsel the necessary time to fully investigate and assess the presence or absence of § 3553 factors for this particular defendant, an inquiry that was inapplicable prior to *Booker*.

Respectfully Submitted,

THOMAS CANNON

RICHARD H. PARSONS
Federal Public Defender

s/Tiffani D. Johnson

BY:_____
TIFFANI D. JOHNSON, Bar No. 6278909
Assistant Federal Defender
300 West Main Street
Urbana, Illinois 61802
Phone: (217) 373-0666
Fax: (217) 373-0667
Email: tiffani_johnson@fd.org

### CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United

States Attorney Timothy Bass.

s/Tiffani D. Johnson

_____
TIFFANI D. JOHNSON, Bar No. 6278909
Assistant Federal Defender
300 West Main Street
Urbana, Illinois 61802
Phone: (217) 373-0666
Fax: (217) 373-067
Email: tiffani_johnson@fd.org

C:\Documents and Settings\Tiffani D Johnson\My Documents\SENTENCE\cannonsentcom.frm