UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>v.<br><br>THOMAS L. CANNON,<br><br>    Defendant. | No.: 03-20085 |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF A NEW TRIAL AND SUPPLEMENTAL SENTENCING COMMENTARY

NOW COMES the Defendant, THOMAS L. CANNON and Richard H. Parsons, Chief Federal Public Defender for the Central District of Illinois, by and through TIFFANI D. JOHNSON, Assistant Federal Public Defender, and hereby files the following Memorandum in support of his Motion For A New Trial, and Supplemental Sentencing Commentary.

Mr. Cannon requests a new trial, or in the alternative, the imposition of a sentencing no higher than the 30-years prescribed by § 841(b)(1)(C), without regard to any mandatory minimums. Mr. Cannon also objects to a sentencing range higher than 63-78 months, and to any fines and supervised released based thereon. In support thereof, Mr. Cannon states as follows:

**I.**     **Pursuant to *United States v. Booker* and *United States v. Edwards*, Mr. Cannon hereby objects to all crack-based sentencing enhancements.**

**A.**     **Summary of Argument**

In the case at hand, it is unclear whether the jury found that Mr. Cannon possessed "cocaine base" or "crack cocaine." The Seventh Circuit ruled that while all crack cocaine is cocaine base, not all cocaine base is crack cocaine. *United States v. Edwards*, No. 03-4234, (7th Cir, February 11,

2005.) The *Edwards* court remanded the case for re-sentencing pursuant to 18 U.S.C.§ 841(b)(1)(C), because the district court ruled that the drugs in question were cocaine base, and not crack cocaine. *Id.* Cocaine base does not trigger the same enhanced penalties required for crack cocaine. *Id.*

Based upon the ambiguity in the Indictment, Stipulation, and in the Government's proposed jury instruction, this Court instructed the jury, and summarized the indictment, in the disjunctive ("cocaine base <u>or</u> crack.") (T.Tr. 139:22, 574:17, 21-22; 575:15, 19-20; 576:11; 617:21-22; 623:7.) The Seventh Circuit recognized the validity of the Fifth Circuit's ruling that even where an indictment is phrased in the conjunctive, a subsequent jury instruction presented in the disjunctive renders the general verdict ambiguous, thereby requiring a sentence under the section establishing the lesser penalty *United States v. Banks*, 78 F.3d 1190, 1202 *citing United States v. Bounds*, 985 F.2d 188 (5th Cir. 1993), *cert denied*, 510 U.S. 845 (1993).

Although Mr. Cannon entered into a written stipulation at trial that he possessed "cocaine base ('crack')," this stipulation is ambiguous, in that it incorrectly implies that "cocaine base" and "crack" are interchangeable terms. However, since not all cocaine base is crack cocaine, the terms are not interchangeable. The general verdict and Indictment utilize this same ambiguous language. Such language is similar to charging in the disjunctive, in that it implies that a jury can find that the substance was either cocaine base or crack cocaine, interchangeably.

The Seventh Circuit recognized that where the indictment charged the defendant with distributing "methamphetamine/amphetamine, the "/" was equal to an "or," thereby charging in the disjunctive, and rendering the jury's general verdict ambiguous. The jury improperly was able to reach its verdict by finding the defendant guilty of either drug. *Banks*, 78 F.3d 1190, 1202 *citing United States v. Owens,* 904 F.2d 411, 414 (8th Cir.1990). Similarly, the jury in the case at hand could have found that Mr. Cannon possessed cocaine base or crack cocaine due to the ambiguity in

the Indictment, stipulation and general verdict.

This ambiguity is especially problematic where Mr. Cannon stated that he did not understand what the stipulation meant (T.Tr. at 222:9), and defense counsel contributed to, rather than alleviated that misunderstanding. (T.Tr. at 224:20-23.) Other than Mr. Cannon's ineffectively counseled ambiguous stipulation, the record is devoid of evidence supporting a finding that the drugs in question were crack cocaine. The Illinois State Police Lab Report characterized the drugs as "cocaine base."

**B.      The Seventh Circuit in *Edwards* ruled that while all crack cocaine is cocaine base, not all cocaine base is crack cocaine**

In *Edwards*, the Seventh Circuit ruled that where the District Court found that the drugs in question were cocaine base, and not crack cocaine, enhanced penalties under 18 U.S.C. § 841(b)(1)(B)-(A) could not be applied. *Edwards*, No. 03-4234. After canvassing the legislative history of § 841(b), the Court concluded that it was clear that Congress intended the enhanced penalties to apply to crack cocaine, and the lesser penalties to apply to all other forms of cocaine base. *Id.*

The district court in *Edwards* refused to accept the testimony of the government's expert, Dr. James DeFrancesco, that the substances in the defendant's possession were crack cocaine. Dr. DeFrancesco's opinion was not based upon scientific tests or expert examination, but upon the definition in the sentencing Guidelines, which reads "'Cocaine base,' for the purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride (powder cocaine) and sodium bicarbonate (baking soda) and usually appearing in a lumpy, rocklike form." U.S.S.D. § 2D1.1(c). *Edwards*, at 4. The expert improperly defined all cocaine base as crack cocaine based upon the Guidelines rather than any

scientific principles. *Edwards*, 294 F.Supp. 954, 958 *reversed* No. 03-4234.

Scientifically, not all cocaine base is crack cocaine. *Id.* Cocaine in its natural state, after abstraction from coca leaves, is a base. *Edwards* at 6. Therefore, chemically, "cocaine" and "cocaine base" are identical. *Edwards*, at 6. Using sodium carbonate (soda ash) and water, coca leaves are converted into coca paste. DEA, "*Coca Cultivation and Cocaine Processing: An Overview*,"(Strategic Intelligence Section 1Sep93). Coca paste is usually a chunky, off-white to light brown, putty-like substance that can be smoked. *Id.* When further refined, coca paste is transformed into a harder cocaine base. *Id.*

Coca paste generally is converted directly into cocaine hydrochloride (powder cocaine) prior to entering the United States. *Edwards* No. 03-4234 at 6. There are at least two ways that powder cocaine, however, can be converted back to cocaine base by utilizing a process that "frees" the cocaine base from the hydrochloride. *Id.* Freebase cocaine is produced by adding ammonia, ether or another organic solvent. *Id.* Crack cocaine is produced by adding baking soda and water. *Id.* Rock cocaine is also produced by adding baking soda and water, but has a different heating and cooling process than crack cocaine.

**C.   Mr. Cannon did not knowingly stipulate that the drugs in question were crack cocaine, and the evidence does not support such a finding**

This Court was reluctant to accept Mr. Cannon's stipulation where his counsel told him to answer "yes" during this Court's questioning. (T.Tr. at 223:19-25; 225:12-18.) Counsel acknowledged on the record that Mr. Cannon was hesitate to stipulate to the drug type and amount. (224:20-23.) Contrary to his counsel's reassurance, this hesitation and lack of understanding was justified, where his counsel had been provided with no information to support that the drugs in question were crack cocaine as opposed to some other form of cocaine base, and where: (1) the lab

report indicated that the drugs were "cocaine base;"(2) there was no evidence that Mr. Cannon manufactured the drugs; and (3) there was no evidence that the officer's field test could distinguish crack cocaine from other forms of cocaine base.

The trial record is completely devoid of any evidence to support a finding that the drugs were crack cocaine rather than cocaine base other than Mr. Cannon's ineffectively counseled ambiguous stipulation. Although the officers referred to the drugs as "crack cocaine," they also used the language "appeared to be cocaine and crack cocaine," which is more consistent with typical officer testimony, since they are not chemists. (T.Tr. at 216:21, 220:10 & 25; 221:1; 279:13; 396:4 & 13; 398:1 & 9.) Both Mr. Cannon and his brother denied knowledge of the type of substance found. (T.Tr. at 499:13 and 553:8.) While the Officers indicated that Mr. Cannon admitted to them that he had sold crack cocaine, cocaine and cannabis, there was no information presented about Mr. Cannon manufacturing crack cocaine, or having a basis of knowledge to distinguish crack cocaine from other forms of cocaine base. (T.Tr. 342:8.)

**D.** **The Illinois State Police Lab considers all cocaine base to be crack cocaine, and does not have a method to distinguish cocaine base from crack cocaine**

A forensic scientist from the Illinois State Police Division of Forensic Services will testify at Mr. Cannon's sentencing hearing that he cannot conclusively determine whether a substance is crack cocaine as opposed to some other form of cocaine base. He relies upon the characterization of the substance submitted by the police. The Police field test, however, also does not distinguish crack cocaine from other forms of cocaine base. Furthermore, he cannot scientifically distinguish crack cocaine from other forms cocaine base visually, since there are overlapping physical characteristics between crack cocaine and other forms of cocaine base. *See Appendix.* Essentially, he considers all cocaine base to be crack cocaine.

**E. A crack-based statutory enhancement cannot be found to have been proven to a jury beyond a reasonable doubt, where there was ambiguity in the Indictment, Stipulation and General Verdict; and where this Court repeatedly used the terms "crack" and "cocaine base" in the disjunctive when giving the jury instructions**

Mr. Cannon cannot be subjected to a crack-based statutorily enhanced sentence where the drug type was not clearly proven to a jury beyond a reasonable doubt. *United States v. Knight*, 342 F.3d 697, 710 (7th Cir. 2003) citing *United States v. Nance,* 236 F.3d 820, 824-25 (7th Cir.2000). Anything less would violate Mr. Cannon's constitutional rights under the Fifth Amendment Due Process Clause and the Sixth Amendment's Notice and Jury Trial guarantee.

The Seventh Circuit has noted that where the district court instructs the jury in the disjunctive, the court must apply the least severe penalty. *Banks*, 78 F.3d at 1202. The Court in *Banks* provides a comprehensive review of circuit case law where the jury was instructed in the disjunctive. *Id.* When an indictment is phrased in the disjunctive (e.g. a defendant is charged with conspiracy to distribute methamphetamine or amphetamine) it is generally held that a general verdict based upon the indictment is ambiguous. *Id.* citing *Owens*, 904 F.2d at 414 (indictment that charged the defendant with conspiring to distribute "methamphetamine/amphetamine,"meant that the defendant had been charged and convicted of conspiracy to distribute either methamphetamine or amphetamine. This construction rendered the jury's general verdict ambiguous because the jury was able to reach its verdict by finding the defendant guilty of conspiring to distribute either drug.)

In *Owens*, the sentence based upon the methamphetamine was vacated, and the court withheld judgment on the defendant's conspiracy conviction for thirty days, giving the government the option of consenting to a new sentence based upon the amphetamine charge. *Id.* If the government did not consent, the court held that the defendant's conviction would be vacated and it would remand the matter for a new trial. *Id.* at 415.

This Court should follow a similar course of action in Mr. Cannon's case. It is notable that during the trial, the Government clearly referred to the substance as "crack cocaine," but chose not to utilize this same clarity in drafting the Indictment, Stipulation and proposed jury instruction (T.Tr. at 183-192, 577-587.) The Government should not cry foul where it demonstrates that it knows how to unambiguously refer to "crack cocaine," but instead chooses to use ambiguous language.

The Seventh Circuit recognized that other circuits that have considered indictments phrased in the disjunctive, have reached the same result as the Eight Circuit. *Banks*, 78 F.3d at 1202 *citing, e.g., United States v. Bush,* 70 F.3d 557 (10th Cir.1995) (defendant's indictment for distribution of "cocaine (powder) and/or cocaine base (crack)" held to be ambiguous), *cert. denied*, 516 U.S. 1082 (1996); *United States v. Garcia,* 37 F.3d 1359, 1370 (9th Cir.1994) ("*Garcia's* jury was charged with determining whether he was guilty of conspiring to commit the narcotics charges or whether he was guilty of conspiring to use communications facilities to facilitate the commission of drug offenses."), *cert. denied,* 514 U.S. 1067 (1995); *United States v. Baker,* 16 F.3d 854 (8th Cir.1994) (verdict convicting defendant of violating 21 U.S.C. § 856 by making house available "for the purpose of distributing or using a controlled substance" held to be ambiguous and could not serve as basis for career offender sentencing); *United States v. Pace,* 981 F.2d 1123 (10th Cir.1992) (possession with intent to distribute "methamphetamine/amphetamine," held to be ambiguous; sentence based on methamphetamine vacated for new trial or for re-sentencing based on amphetamine); *United States v. Quicksey,* 525 F.2d 337 (4th Cir.1975) (jury allowed to convict for either a general conspiracy or a narcotics conspiracy, and not required to return a special verdict; sentenced based upon narcotics conspiracy vacated).

Finally, the Seventh Circuit acknowledged that other courts, such as the Fifth Circuit in *Bounds,* have been faced with a slightly different situation, in which the indictment was phrased in

the conjunctive, yet a subsequent jury instruction was presented in the disjunctive. *Banks*, 78 F.3d at 1202 citing *Bounds*, 985 F.2d 188. In *Bounds,* the indictment charged the defendant with conspiracy to manufacture "amphetamine and phenylacetone," but the jury was subsequently instructed that the conspiracy involved "phenylacetone or amphetamine." The Fifth Circuit determined that the jury instruction rendered the general verdict ambiguous, and the sentence based upon the more serious of the two drugs could not stand. *Cf. United States v. Cooper,* 966 F.2d 936 (5th Cir.1992) (indictment alleged two objects of conspiracy in the conjunctive, but jury was instructed that only one object was necessary for a guilty verdict), *cert. denied,* 506 U.S. 980 (1992). The written jury instruction, in the case at hand, did not expressly include a disjunctive, but this Court's oral instructions were given repeatedly in the disjunctive, obviously as a result of the clearly ambiguous language used in the Government's documents.

F. **At sentencing, this Court must make a determination, separate from the jury, of whether the evidence supports a crack-based enhancement**

At sentencing, this Court must determine whether Mr. Cannon's trial stipulation was a knowing stipulation that he distributed crack cocaine, as opposed to cocaine base. *United States v. Garrett* 189 F.3d 610, 611-12 (7th Cir1999) (sentence vacated where the record was unclear that the defendant knew the difference between cocaine base and crack cocaine, when he stipulated that he distributed cocaine base "commonly referred to as crack") *citing United States v. James*, 78 F.3d 851, 856 (3d Cir.), *cert. denied*, 519 U.S. 844 (1996). A jury is not bound by the stipulation of the parties to an element of an offense. *Old Chief v. United States*, 519 U.S. 172, 200 (1997) (a defendant's stipulation to an element of an offense does not remove that element from the jury's consideration.)

Similarly, this Court should not be bound by that stipulation at sentencing. Where the lab

report only indicated that the drugs in question were "cocaine base," and there is no evidence that Mr. Cannon had an independent basis of knowledge that the drugs were crack cocaine, this Court should not consider Mr. Cannon's stipulation as having been knowingly made. *See, e.g., Garrett*, 189 F.3d at 611-12.

When *Apprendi* does not apply, the Seventh Circuit has held that the Government has the burden of proving by a preponderance of the evidence that the drug distributed was crack cocaine, instead of another form of cocaine base, at sentencing. *Garrett* 189 F.3d at 61. Where the defendant did not knowingly enter into the stipulation, and there is no independent evidence supporting enhanced crack-based penalties, this Court should sentence Mr Cannon according to the lesser cocaine base penalties.

## II.     Section 21 U.S.C. 841 is unconstitutional under *Apprendi* and requires the application of the default statutory maximum in § 841(b)(1)(C)

Mr. Cannon hereby incorporates his prior Sentencing Commentary, and attempts to further clarify his argument below.

### A.     Summary of Argument

Prior to *Apprendi*, the Seventh Circuit agreed that the plain language and legislative intent of § 841 clearly established that § 841(a) contained the elements of one offense, and § 841(b) established the sentencing factors. *United States v. Jackson*, 207 F.3d 910, 920 (7th Circuit 2000). Elements of the offense must be proven to a jury beyond a reasonable doubt, while sentencing factors can be determined by a judge by a preponderance of the evidence. *Harris*, 122 S.Ct. at 2415. After *Apprendi*, the Seventh Circuit change its position and ruled that § 841(b)(1) are not always sentencing factors, but did not go so far as to construe them as elements, thereby constructively rewriting the statute to create a hybrid sometimes-sentencing-factor-not-quite-element. *United States*

*v. Nance*, 236 F.3d 820, 825 (7th Cir. 2000).

In doing this, the Seventh Circuit failed to follow Supreme Court precedent which demonstrates the proper way to judicially review sentence enhancing statutes. Judicial review limits courts, pursuant to the separation of powers doctrine, to a determination of: (1) the statute's operative effect; (2) whether that operative effect can be construed constitutionally; and (3) if not, whether the statute can be saved through severance.

After reviewing the plain language and the legislative history of § 841, the Seventh Circuit correctly determined that the operative effect of § 841(b) was to establish sentencing factors, and not elements of the offense. That same plain language and legislative history clearly defeats any attempts to constitutionally construe § 841(b). There simply is nothing in the plain language or the legislative intent to support a construction that § 841(b), when read in conjunction with § 841(a), creates separate offenses designating drug amount and type as elements. Therefore the Seventh Circuit must declare § 841 unconstitutional under *Apprendi*, and sever the portions of § 841(b) that increase the default statutory maximum, which are inextricably intertwined with the statutory minimums. When the Seventh Circuit construed § 841(b) to create a hybrid sometimes-sentencing-factor-not-quite-element, this construction contradicted the canons of judicial review most recently affirmed in *Booker*, and therefore cannot stand.

**B.  It is clear from the plain language and legislative intent that § 841(b) established sentencing factors and not elements.**

Although a plain reading of § 841 does not expressly reveal whether § 841(b) establishes sentencing factors or elements, federal laws usually lists all offense elements in a single sentence, and separates sentencing factors into subsections. *Harris v. United States*, 536 U.S. 545, 552-53 (2002). When a statute has this sort of structure, the court can presume that its principle paragraph

defines the crime, and the subsequent ones define the penalties. *Id* at 2412.

Such a presumption is reinforced by § 841(b)'s legislative history. Congress used terminology such as "penalties," "enhancement sentencing provisions," and "punishment," as opposed to "elements" in referencing § 841(b). See S. Rep. 98-225, 1984 U.S.C.C.A.N. 3182 (1st Sess. 98th Cong 1983). In Part A§2, entitled Controlled Substances Penalties, the senate report noted that subsection [a] punishes those who commit controlled substance offenses, while "the penalties for these offenses are set out in subsection [b] of § 841. The Seventh Circuit acknowledged that it "is apparent that Congress intended the type and quantity of the drugs distributed by a defendant convicted under section 841(a) to be determined at sentencing . . . and Congress's determination of the appropriate allocation of decisional responsibilities carries a presumption of constitutionality." *Jackson*, 207 F.3d, 910, 920.

When the Seventh Circuit later ruled that § 841(b) did not always invoke sentencing factors, this ruling completely contradicted the plain language and legislative history of the statute, and exceeded the confines of judicial review.

**C.** **The Seventh Circuit exceeded the boundaries of judicial review for construing sentencing enhancement statutes as set forth by the Supreme Court**

Congress, not the courts, must define the contours of a federal criminal offense. *Bousely v. United States*, 523 U.S. 614, 620-21 (1998). The courts cannot revise an allocation of authority between judge and jury, which is explicit or implicit in a criminal statute. *United States v. Jackson*, 390 U.S. 570, 572-82 (1968). The Supreme Court has never constructively rewritten a sentence enhancing statute to comply with the constitution. *United States v. Booker* 125 S.Ct. 738 (2005) *; See also Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Jones v. United States*, 526 U.S. 227 (1999); *Almendarez-Torres v. United States*, 523 U.S. 224 (1998); *McMillan v. Pennsylvania*, 477 U.S. 79

(1986); *Patterson v. New York*, 432 U.S. 197 (1977); *Mullaney v. Wilber*, 421 U.S. 684 (1975).

The most radical thing that the Supreme Court has done, is to sever a constitutional portion of a statute in order to fix an unconstitutional portion, purportedly to comply with Congressional preference. *See Booker*, 125 S.Ct. 738. This action, however, is in stark contrast with the Seventh Circuit's action of constructively rewriting § 841(b) by creating a hybrid sometimes-sentencing-factor-not-quite-element, and in doing so, completely contradicting not only the plain language of § 841(b) but also its clearly expressed legislative intent. While courts can sever statutory provisions in a manner that it believes that Congress would prefer, they cannot constructively rewrite statutes to meet what they believe to be Congressional preference.

There simply is no Supreme Court stare decisis to support the Seventh Circuit's constructive rewriting of § 841(b) to form a hybrid sometimes-sentencing-factor-not-quite-element. Criminal statutes must be strictly construed, and remaining ambiguities must be resolved in favor of the defendant pursuant to the rule of lenity. It is only where the plain language and legislative intent of the statute support more than one meaning, that the statutory provisions can be construed in a way to avoid unconstitutionality; however penal statutes are not to be construed to include anything beyond their letter. *Huddleston v. United States*, 415 U.S. 814 (1974).

While counsel acknowledges that all of the circuits have participated in some form of constitutional avoidance in construing § 841(b) to comport with *Apprendi*, counsel contends that these constructions are erroneous in light of the confines of judicial review for sentence enhancing statutes, as most recently espoused in *Booker*, which defines the outer-limits of permissible statutory construction.

**D.     To save §841, the unconstitutional provisions must be severed in their entirety.**

The parts of § 841 which violate *Apprendi*, by providing for Judge-based enhancements for powder cocaine and crack cocaine, are § 841(A)-(B), which increase the statutory maximum from 20-years to 40-years ((b)(1)(B)) to life imprisonment ((b)(1)(A)). While an argument can be made that only the maximum penalties should be severed, and that the mandatory minimums should remain, the Eleventh, Ninth and D.C. Circuits have found that the mandatory minimums in § 841(b) are intricately linked to the statutory maximums proscribed in each section. *United States v. Velasco-Heredia*, 319 F.3d 1080 (9th Cir. 2003); *United States v. Smith*, 289 F.3d 696, 708 (11th Cir. 2002) (rejecting that a defendant convicted under § 841(b)(1)(C) was subject to a 30-year mandatory minimum).

The *Velasco-Heredia* Court noted that unlike the statue in *Harris v. United States*, which prescribed a maximum penalty of life regardless of which mandatory minimum applied, the mandatory minimums in § 841 are triggered only when the jury finds, beyond a reasonable doubt, the applicability of a constitutional statutory maximum subsection. *See Velasco-Heredia,* 319 F.3d 1090 interpreting *Harris*, 536 U.S. 556 (2002). Where the statutory maximum subsection is unconstitutional, and therefore cannot be found beyond a reasonable doubt, this Court should not be allowed to borrow the mandatory minimum provisions from the otherwise unconstitutional subsection. Each mandatory minimum term directly corresponds to a particular maximum sentence, and simply cannot be applied in a vacuum by extraction from its unconstitutional counterpart.

The Seventh Circuit rejected an argument similar to the one made in *Velasco-Heredia*, prior to *Harris*. *United States. v Rodgers*, 245 F.3d 961(7th Cir. 2001); *See also United States v. Solis*, 299 F.3d. 420 (5th Cir. 2002) (rejecting the argument after *Harris*); *United States v. Titlback*, 300 F.3d 919 (8th Cir. 2002) (same); *United States v. Copeland*; 321 F.3d 582 (6th Cir. 2003) (same).

However, Mr. Cannon contends that *Harris* is contravening authority supporting the use of the *Velasco-Heredia* analysis rather than the antiquated *Rodgers* analysis. Furthermore, *Rodgers* did not involve a finding of unconstitutionality.

## III. Conclusion

Mr. Cannon cannot be sentenced under § 841(b)(1)(A)-(B) where (1) it is unclear whether the jury found that he possessed "cocaine base" or "crack cocaine;" (2) he did not knowingly waive the Government's burden to prove beyond a reasonable doubt that the substance involved was crack cocaine base as opposed to another form of cocaine base; (3) the Government cannot meet its burden to prove that the substance was crack cocaine; and (4) § 841(b)(1)(A)-(B) must be stricken as unconstitutional in their entirety.

The amount of cocaine base in the case at hand, when combined with the powder cocaine, totals 123.5 grams, thereby requiring sentencing under § 841 (C), providing a maximum penalty of 30-years after one prior felony drug conviction. The Guidelines provide for a base Offense level 18, resulting in a sentencing range of 63-78 months, if Mr. Cannon's other objections are denied.

Respectfully Submitted,

THOMAS CANNON

RICHARD H. PARSONS
Federal Public Defender

BY: s/Tiffani D. Johnson
TIFFANI D. JOHNSON, Bar No. 6278909
Assistant Federal Defender
300 West Main Street
Urbana, Illinois 61802
Phone: (217) 373-0666
Fax: (217) 373-0667
Email: tiffani_johnson@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorney Timothy Bass.

                                              s/Tiffani D. Johnson
                                              _____
                                              TIFFANI D. JOHNSON, Bar No. 6278909
                                              Assistant Federal Defender
                                              300 West Main Street
                                              Urbana, Illinois 61802
                                              Phone: (217) 373-0666
                                              Fax: (217) 373-067
                                              Email: tiffani_johnson@fd.org

I:\Johnson\CLIENTS\Cannon\supcom.wpd